**FLEISHMAN et al. v. UNITED STATES.**

**Civ. A. No. 6115.**

United States District Court
D. Oregon.

Feb. 20, 1953.

James Arthur Powers, Portland, Or., for plaintiffs.

Donald W. McEwen, Asst. U. S. Atty., Portland, Or., and Fred S. Gilbert, Sp. Asst. to the Atty. Gen., for the Government.

SOLOMON, District Judge.

Plaintiffs filed this action against the United States to recover the amounts paid by them to the Collector of Internal Revenue for income tax deficiencies for the year 1945. The deficiencies were based upon a finding by the Commissioner of Internal Revenue that all the income from the Southwest Oregon Lumber Company was chargeable to the plaintiffs without allocating any of the income to their respective wives who, the Commissioner found, should not be recognized as bona fide partners for income tax purposes.

The evidence showed that J. M. Fleishman (the son of A. H. Fleishman Sr. and the brother of A. H. Fleishman Jr.) employed plaintiffs in his lumber business. During the year 1943, and the early part of 1944, J. M. Fleishman constructed a custom mill or remanufacturing plant near Grants Pass, Oregon, and he employed his father and brother during such construction.

As of February 1, 1944, plaintiffs and their wives formed a partnership under the name of Southwest Oregon Lumber Company. The agreement provided that the capital of the partnership, consisting of $10,000, was to be contributed by the wives in equal shares. Neither plaintiff was to contribute capital but each agreed to contribute his services. For this, each plaintiff was to receive 30 percent of the net profits and each wife was to receive 20 percent of the net profits.

In accordance with a previous understanding, J. M. Fleishman loaned Elizabeth Fleishman (his mother and wife of plaintiff A. H. Fleishman Sr.) the sum of $5,000, and loaned Ruth Fleishman (his sister-in-law and wife of plaintiff A. H. Fleishman Jr.) a similar amount. These sums were used to supply the capital of the partnership. J. M. Fleishman then leased the mill to the partnership.

The partnership filed an assumed business name certificate with the County Clerk of Josephine County, Oregon, and, thereafter, the mill was operated in the name of the partnership. The business was an immediate financial success, a considerable portion of the business having come from J. M. Fleishman, a wholesale lumber dealer.

On April 1, 1945, the partnership purchased from J. M. Fleishman the mill property for $190,268.60 payable $45,154.88 in cash, and by the assumption of a mortgage for $70,116.82 and a note secured by a mortgage in favor of J. M. Fleishman for $75,000 payable $5,000 a month.

### Claim of A. H. Fleishman Jr.

On or immediately prior to April 20, 1945, A. H. Fleishman Jr. and his wife, Ruth, separated because of marital difficulties. On such date, she executed an assignment of her interest in the partnership to her husband for a stated consideration of $1. At such time, the profits allocable to her under the partnership agreement amounted to $9,658.62. On April 2, 1946, they executed a property settlement agreement in which he agreed to convey to her their home and to pay her $500 in cash and $200 a month for her support and the support of their three minor children. He also agreed to pay all debts in connection with the partnership business and to hold her harmless from any of such obligations which, the evidence showed, consisted of the $5,000 note to J. M. Fleishman and liability for income taxes arising from her distributive share of the partnership income. This agreement was approved by the court in the divorce decree.

On the basis of such documents, which indicate a wide disparity between the value of Ruth Fleishman's alleged interest in the partnership business and the amount she received therefor, and her testimony which confirmed the fact that her interest was merely a paper interest and that she and her husband did not intend to become partners for a valid business purpose, I find

that she was not a bona fide partner for income tax purposes and the Commissioner did not err in assessing plaintiff A. H. Fleishman Jr. with all the income which the books of the partnership revealed was allocable to Ruth Fleishman for the year 1945, by reason of the partnership agreement.

### Claim of A. H. Fleishman Sr.

In 1944, Mrs. Elizabeth Fleishman, the wife of A. H. Fleishman Sr., was a housewife with practically no assets of her own. She was supported by her husband who, in turn, was employed by their son, J. M. Fleishman.

J. M. Fleishman testified that he loaned his mother the $5,000, with which she made the capital contribution to the partnership, to enable her to earn some money so that she would have security in her old age. The following year, the Fleishman Lumber Company, owned by J. M. Fleishman, paid $6,650 on account of a purchase of a home for $6,900. Title to the property was taken in the name of A. H. Fleishman Sr. and Elizabeth Fleishman, as tenants by the entirety. No note or mortgage was ever given for such payment and no part of it was ever repaid.

Shortly after the $5,000 loan was made, Mrs. Elizabeth Fleishman executed a will in which she bequeathed to her son, J. M. Fleishman, "all money, right, title, interest, estate, claim and demand in and to my partnership interest or share in the Southwest Oregon Lumber Company including all rights, privileges and remedies incidental thereto or arising out thereof." At that time, her interest in the partnership was practically her only asset. However, she did bequeath to her husband a life interest in the remainder of her property with power of disposition. In the event of his death without having exercised such power, the balance was to be divided among all of her children, share and share alike.

Mrs. Elizabeth Fleishman remained a partner in the Southwest Oregon Lumber Company from the time of its organization until 1948, at which time the partnership was dissolved and its assets transferred to a corporation which the partners organized under the same name. For her distributive share of the partnership assets, she received 20 percent of the stock of such corporation. During the life of the partnership, the partners acquired a planing mill at Bucoda, Washington, and another mill at Modoc Point, Oregon. Both mills were subsequently incorporated and she received 20 percent of the capital stock of such corporations.

Mrs. Fleishman died on the 26th day of October, 1948. The inventory and appraisal filed in her estate shortly thereafter list the stock in the three mills, a claim for refund from the Southwest Oregon Lumber Company for State and Federal taxes, and three small insurance policies. She had no cash on hand or in the bank but there are listed three notes, one for approximately $5,000 dated May 1, 1948, and two notes totaling approximately $6,200 dated October 19, 1948, all of which were payable to her from her son J. M. Fleishman. The original note for the obligation of $5,000, which she owed her son J. M. Fleishman, had apparently been paid out of the profits of the partnership. As I previously pointed out, apparently the provision in the will with reference to her interest in the Southwest Oregon Lumber Company was construed to make her son J. M. Fleishman the beneficiary of her stock in the Southwest Oregon Lumber Company. She left her husband a life interest in the residuary estate with power of disposition so that he could cut off the other beneficiaries if he desired. There is nothing unusual in this will. Wives often leave all of their property from whatever source derived to their husbands.

At the conclusion of the trial, I expressed the belief that the partnership agreement between the senior Fleishmans, like the transaction between their son and his wife, was merely a paper transaction. On further reflection, I have come to the conclusion that the partnership agreement between the senior Fleishmans was a valid one for tax purposes.

In the usual case in which the Government has attacked a family partnership, the lender of the capital is a member of the partnership, and in such cases the Government contends that the transaction involved

merely a paper allocation of income to the borrower and that the original owner of the capital continues to enjoy all of the interests allegedly transferred.

In this case, J. M. Fleishman, the son who supplied the capital, at no time was a member of the partnership. The Government does not contend that his mother was holding her interest for his benefit nor that he intended to avoid the payment of income taxes for himself. The Government claims that 50% of the income from the partnership, instead of 30% thereof, should be chargeable to A. H. Fleishman Sr. I do not believe that the Government is in a position to contend that a son may not loan his mother money to supply a portion of the capital of a partnership merely because she had no business experience and did not perform services for the partnership. Elizabeth Fleishman's lack of business experience and her failure to perform services do not necessarily mean that she, her husband and her son, A. H. Fleishman Jr., did not intend to enter into a partnership agreement for a bona fide business purpose.[1]

In my opinion, this is a stronger case than Goold v. Commissioner, 9 Cir., 1950, 182 F.2d 573, in which the Court of Appeals reversed a decision of the Tax Court which affirmed a finding of the Commissioner of Internal Revenue that a transfer of a partnership interest by a father to his son was a gift rather than a loan. In that case, if the partnership interest were a gift, all of the income would be treated as his separate property but, if it were a loan, it would be treated as the community property of the son and his wife. In that case the court at page 575 held that:

"Under existing law, the father had complete freedom, at least up to the date of this writing, to transfer his property in any way he saw fit. So far as the disputed income tax deficiencies are concerned, whether or not the sale was an improvident transaction, is not of the business of the tax collector.

The tax collector's apparent opinion that the father should not have sold valuable property to his son without a cash consideration, or that he should not have taken in payment a note payable out of future profits, is utterly immaterial."

A son may loan or give his parents the money with which to purchase a home, as was done in this case. He may also give his mother, or his father or both of them, the money to invest in a partnership. Under Oregon law, 63–301 O.C.L.A., a child, if able, is required to support his needful parents. It is not up to the tax collector to say that a son should continue to support his needful parents from his own income or that if a son makes a loan, it must be made to his father rather than to his mother.

The Government does not seek to allocate the partnership income of Elizabeth Fleishman to her son, J. H. Fleishman, the lender of such money, and there is no evidence in this case that the Senior Fleishmans did not enter into a partnership for a valid business purpose or that Elizabeth Fleishman was not entitled to use and enjoy all of the income from the partnership allocable to her.

For the above reasons, I hold that A. H. Fleishman Sr. is entitled to prevail on his claim.

the partnership by gift to themselves as trustees for the benefit of close relatives.

---

1. Henslee v. Whitson, 6 Cir., 1952, 200 F. 2d 538. The Court sustained a partnership for tax purposes in a case in which partners transferred their interests in